# EXHIBIT 1



**3512 QUENTIN ROAD**
**BROOKLYN, NEW YORK 11234**
**PHONE: (718) 218-9300**
**FAX: (718) 831-2021**

# PROMOTIONAL AGREEMENT

**THIS PROMOTIONAL AGREEMENT** (the "Agreement") is made and entered into as of August 6, 2021 by and between Salita Promotions Corp., a New York corporation, with offices at 3512 Quentin Road, Brooklyn, New York 11234 ("Promoter") and Jermaine Franklin, Jr., residing at ███████████ Saginaw, Michigan 48601 ("Fighter").

**WHEREAS**, Promoter is in the business of, among other things, promoting combative sports events throughout the world and desires to enter into an agreement with Fighter to be his exclusive promoter for his future boxing bouts; and

**WHEREAS**, Fighter is a professional boxer and desires to enter into an agreement with Promoter for it to be his exclusive boxing promoter for his future bouts.

**NOW, THEREFORE**, in consideration of the mutual promises and agreements hereinafter set forth, and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**I. Purses**

(a)     Purses

i.     For Fighter's first Bout under this Agreement, Fighter will engage in a Bout against Dillian Whyte on September 18, 2021, or on any rescheduled date, and will receive a purse of ███████████.

ii.     Thereafter, provided that Fighter has won the first Bout and all succeeding Bouts covered by this Agreement, Fighter's purse for each Bout shall be negotiated and mutually agreed upon between the parties but shall not be less than ███████████ plus an additional Five Thousand U.S. Dollars ($5,000.00) to cover training expenses, unless otherwise agreed upon by the parties herein; provided that such Bout is broadcast on live television or via live streaming on DAZN or ESPN+ in the United States.

iii.     In the event that Fighter participates in an elimination Bout recognized by the WBA, WBC, IBF and/or WBO to determine the mandatory challenger or leading available contender for a World Title (which term means the highest and most prestigious title recognized by the sanctioning organization and does not include any inferior world titles, such as an interim title or a "regular title), Fighter's purse for any such Bout shall be negotiated and mutually agreed upon between the parties but shall not be less than ███████████, unless otherwise agreed upon by the parties herein.

iv.     In the event that the then-reigning champion of any of the WBA, WBC, IBF and/or WBO participates in a World Title defense Bout against Fighter, Fighter's purse for any such Bout shall be negotiated and mutually agreed upon between the parties but shall not be less than ███████████, unless otherwise agreed upon by the parties herein. In addition, in the event that Fighter wins the World Title, Promoter will pay to Fighter an additional bonus in the amount of ███████████.

v.     In the event that Fighter is recognized by the WBA, WBC, IBF and/or WBO as a World Title champion, Fighter's purse for his first World Title defense Bout shall be negotiated and mutually agreed upon between the parties but shall not be less than ███████████ unless otherwise agreed upon by the parties herein, and for all subsequent title defenses, Fighter's purse shall be negotiated and mutually agreed upon between the parties but shall not be less than ███████████ unless otherwise agreed upon by the parties herein.

vi.     In the event that Fighter, as the then-reigning World Title champion of the WBA, WBC, IBF and/or WBO, participates in a unification Bout against another then-reigning World Title champion of the WBA, WBC, IBF and/or WBO, Fighter's purse for such unification Bout shall be negotiated and mutually agreed upon between the parties but shall not be less than ███████████ unless otherwise agreed upon by the parties herein.

vii.     Notwithstanding the foregoing, in the event that Fighter is the featured fighter in the main event of a pay-per-view broadcast distributed live in the United States, Fighter and Promoter will split the net pay-per-view revenues actually received by Promoter from such pay-per-view broadcast as follows: ███████████ to Fighter and ███████████ to Promoter.

viii.     Notwithstanding the foregoing, in the event that Fighter does not win the first Bout or any subsequent Bout or ceases for any reason to be a World Title champion, or in the event that Fighter's Bout is not otherwise covered by Subparagraphs I(a)i. through vii. above for any reason whatsoever, Fighter's purse for his subsequent Bouts shall be negotiated and mutually agreed upon between the parties but shall not be less than One Thousand U.S. Dollars ($1,000.00) per round as calculated by the number of scheduled rounds for such Bout, unless otherwise agreed upon by the parties herein.

1

Initials: _____   _____
                Promoter           Fighter

(b) Fighter further understands and agrees that the purse provisions provided above are based upon Promoter's experience and judgment regarding the revenues that it estimates will be generated from Fighter's Bouts. Fighter acknowledges and agrees that Promoter intends to and is entitled to profit from Fighter's Bouts and that it would be unreasonable on the part of Fighter and not in the spirit of this Agreement to require Promoter to promote a Bout for Fighter where Promoter would not profit from a Bout. Fighter further acknowledges and agrees that unanticipated circumstances may arise during the term of this Agreement (including, without limitation, the unavailability of quality opponents, the imposition of a mandatory opponent by a sanctioning organization, the unavailability of television dates, the scheduling of competing sporting or other events, the effect of losses, injuries, legal problems, unexciting fights or other events on Fighter's marketability, a general lack of public interest in Fighter, etc.) that may make it commercially unreasonable for Promoter to offer Fighter the purse amount otherwise applicable to such Bout. Accordingly and notwithstanding the foregoing provisions of this Paragraph I, an offer by Promoter to Fighter shall constitute a <u>bona fide</u> offer hereunder if such offer is fair and reasonable given all of the then prevailing market conditions. Fighter further agrees that, in the event that Promoter makes such a <u>bona fide</u> offer with respect to a Bout, Promoter shall not be in breach of this Agreement pursuant to applicable law.

(c) Airfare/Accommodation. Promoter will furnish to Fighter round-trip airline tickets, accommodations and food for each Bout under this Agreement as follows:

i. For a non-World Title Bout, for four (4) people, including three (3) economy class airline tickets and one (1) business class airline ticket.

ii. For a World Title challenge, for five (5) people, including four (4) economy class airline tickets and one (1) business class airline ticket.

iii. For a World Title defense, for six (6) people, including five (5) economy class airline tickets and one (1) business class airline ticket.

**II. BOUTS**. Promoter agrees to offer to Fighter the right to participate in not less than three (3) Bouts during each year of the term hereof; provided, however, that in the event that Fighter is recognized as a world champion by any of the WBA, WBC, IBF and/or WBO at any time during the term hereof, then with respect to the year of the term hereof in which Fighter is so recognized and each subsequent year, Promoter shall only be obligated to offer to Fighter the right to participate in two (2) Bouts during each such year. Such Bouts shall be on dates and at sites to be designated by Promoter, in its sole and absolute discretion and against opponents to be designated by Promoter after consultation with Fighter. For purposes of this Agreement, and in satisfaction of Promoter's obligations under this Agreement, Promoter shall be deemed to have complied with its obligations with respect to any Bout if it shall have made a <u>bona fide</u> offer to Fighter to participate in a Bout irrespective of whether such Bout actually takes place for any reason other than Promoter's nonperformance. A bona fide offer is one in which Promoter informs the Fighter of the proposed opponent, purse amount and expected date of the Bout. If such Bout is postponed or canceled for any reason whatsoever or is undercard to a main event and that main event is canceled or postponed for any reason whatsoever, the failure of such Bout to take place shall not be deemed nonperformance by Promoter. Fighter explicitly acknowledges and agrees that (i) an offer for a Bout hereunder may be communicated by Promoter to Fighter and/or one or more of his manager(s) or designated representative(s) (hereinafter, collectively, "manager") in any form and by any means selected by Promoter, including, without limitation, verbally, telephonically, and/or via e-mail, facsimile, mail and/or overnight courier, (ii) Promoter is not required to submit to Fighter or his manager(s) a formal Bout Agreement for such Bout for an offer to constitute an offer hereunder, (iii) any written or electronic record of an offer kept by Promoter in accordance with its business practices, including, without limitation, notes or a memorandum to the file, shall be conclusive evidence of Promoter having made an offer to Fighter and (iv) any offer made by Promoter to Fighter hereunder shall be deemed to include all of the terms and conditions contained in Promoter's standard Bout Agreement, a copy of which is attached hereto. In the event that during the term hereof Fighter is recognized as a world champion or a mandatory or elimination challenger by one or more sanctioning organizations and is designated by a sanctioning organization to participate in a mandatory or elimination bout, Promoter's obligation to offer Bouts to Fighter pursuant to the first sentence of this Paragraph shall be suspended during the period commencing on the date of such designation and ending on the completion of such mandatory or elimination bout.

**III. PROMOTION**. Fighter hereby grants Promoter the sole and exclusive right to secure and arrange all bouts (individually, a "Bout" and collectively, the "Bouts") requiring Fighter's services and to secure, arrange and promote all such Bouts, all upon and subject to the terms and conditions hereinafter set forth. Fighter and Promoter agree that all of Fighter's Bouts under this Agreement will be professional boxing bouts, and that during the term of this Agreement Fighter will not participate in any combat sport other than boxing (including, without limitation, mixed martial arts, martial arts, kickboxing, wrestling or any other combative sport, whether as an individual or team participant and whether as a professional or amateur participant). Fighter agrees that his Bouts will be conducted and the officials shall be designated in conformity with the rules and regulations of the applicable athletic or boxing commission and/or the World Boxing Association ("WBA") and/or the World Boxing Council ("WBC") and/or the International Boxing Federation ("IBF") and/or the World Boxing Organization ("WBO") and/or any other sanctioning organization, and Fighter agrees that he will fully comply with all such applicable rules and regulations. Fighter agrees that he shall participate in each of the Bouts to best of Fighter's ability and that he shall diligently prepare for and honestly competes in each of the Bouts. Fighter further agrees that he shall stay in top physical condition and maintain his fighting weight during the term hereof so that Fighter will be ready, willing and able to participate in a Bout offered by Promoter on the scheduled date. When practicable, Promoter will use its reasonable efforts to attempt to provide Fighter with an offer for a Bout at least thirty days prior to the scheduled date of such Bout; provided, however, that due to training injuries or other unavailability of other boxers or other circumstances that may arise, Promoter may offer a Bout to Fighter less than thirty days prior to its scheduled date. Fighter agrees that he shall not take or use any drugs or other substances which are prohibited by U.S. Federal or State law or any of the State athletic or boxing commissions in the United States or any of the WBA, WBC, IBF and WBO and will otherwise comply with all of the anti-doping

2
Initials: _____   _____
                Promoter            Fighter

rules of such commissions and sanctioning organizations.  Except as otherwise provided by the rules and regulations of the applicable athletic or boxing commission with jurisdiction over an applicable Bout, Promoter and Fighter shall mutually agree on the brand and size of the gloves to be used in his Bouts.  Fighter agrees that Promoter shall have the right to designate the ring size of the Bout, the order of ring walks and fighter introductions and any and all other matters pertaining to the presentation and staging of the Bout.  Fighter further agrees that in the event that Fighter agrees in his Bout Agreement to fight a Bout at a certain weight and Fighter fails to weigh-in for such Bout at or below the applicable weight limit, in addition to Promoter's other rights and remedies, Fighter agrees that he will be solely liable for any and all damages Promoter is required to pay to Fighter's opponent or any other person or entity due to Fighter's failure to make weight.  Promoter acknowledges that Fighter intends to form a corporate entity named Jermaine Franklin, Jr., Inc.  Fighter represents that such corporate entity will not be in the business of promoting boxing or other combat sports, but will be involved in marketing, branding and promoting the image of Fighter; Fighter further represents that the activities of the corporate entity will in no way interfere with or be in conflict with Promoter's rights under the Agreement.

   **IV.   TERM**.  (a)   This Agreement shall be for an initial term of two (2) years, commencing on the date of this Agreement, excluding any time that Fighter is unable or unavailable to compete due to injury or other cause ("Initial Term").

   (b)   Fighter hereby grants Promoter the option to renew this Agreement for an additional one (1) year period (the "Option Period"), excluding any time that Fighter is unable or unavailable to compete due to injury or other cause.  Promoter shall be deemed to have exercised its option to renew this Agreement as provided in the preceding sentence, unless Promoter notifies Fighter of its election not to renew this Agreement within three (3) months prior to the commencement of the Option Period.

   (c)   In the event that Fighter is recognized by the WBA, WBC, IBF and/or WBO as a world champion during the term hereof (including during the Option Period), the term of this Agreement shall be extended for the entire time that Fighter is so recognized plus a period of one (1) year following the date on which Fighter thereafter ceases to be world champion.  Such extension shall in no way shorten the Initial Term or one-year Option Period as set forth in (a) and (b) above.

   **V.   NOTICES**.  Any notice required or desired to be given hereunder shall be in writing and sent (i) postage prepaid by certified mail, return receipt requested, (ii) by e-mail or (iii) by confirmed facsimile, addressed as follows:

(a)  To Promoter  
Salita Promotions Corp.  
3512 Quentin Rd  
Brooklyn, New York 11234  
FAX:  (718) 831-2021  
E-MAIL: ds@salitapromotions.com

(b) To Fighter  
Jermaine Franklin, Jr.  
c/o Aaron Alfaro  

PHONE:  
E-MAIL:  

All such notices shall be deemed given when mailed, e-mailed or sent by confirmed facsimile.  In the event that Fighter does not fill-in or only partially completes the foregoing notice section applicable to Fighter's contact details, Fighter hereby consents to Promoter completing said section based on its contact information for Fighter in its books and records.

   **IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first above written.

Salita Promotions Corp.

**Promoter** _____   **Fighter** _____

**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT.  IF NOT FULLY UNDERSTOOD, SEEK THE ADVICE OF AN ATTORNEY PRIOR TO SIGNING.  NEITHER PARTY IS REQUIRED TO ACCEPT ANY OF THE TERMS AND CONDITIONS IN THIS AGREEMENT.  TERMS AND CONDITIONS SHOULD BE NEGOTIATED BASED UPON THE RESPECTIVE INTERESTS, OBJECTIVES AND BARGAINING POSITIONS OF ALL INTERESTED PERSONS.**

(Rev. 12/15)

3  
Initials: _____    _____  
   Promoter      Fighter

## AFFIDAVIT

State of _____ )
                                                                                   ) ss:
County of _____ )

       THE UNDERSIGNED, being first duly sworn, deposes and says:

       1.      I have personal knowledge of the facts recited herein and could testify to them if called upon to do so.

       2.      I am a professional boxer and voluntarily executed the foregoing Promotional Agreement (the "Promotional Agreement") with Salita Promotions Corp., a New York corporation ("SPC").

       3.      The rights which I granted SPC pursuant to the Promotional Agreement were not granted as a condition precedent to my participation in a professional boxing match against another boxer.

       I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge, information and belief.

Fighter _____

Subscribed and sworn before me

This _____ day of _____, 20___.

_____
NOTARY PUBLIC in and for said
County and State

My commission expires: _____

Commission No.: _____

4
Initials: _____  _____
           Promoter    Fighter

# STANDARD TERMS AND CONDITIONS

**VI.  WORLDWIDE RIGHTS TO BOUTS**. Fighter grants to Promoter the following rights, including, but not limited to, all worldwide rights, title and interest to the Bouts promoted by Promoter hereunder, in perpetuity, including, but not limited to:

(a)  The right to all site fees, live-gate receipts, sponsorship fees, and motion picture, radio, television (whether live or delayed, interactive, home or theater, pay, pay-per-view, satellite, closed circuit, cable or subscription), telephone, computer, CD-ROM, broadband, digital, and online services, the worldwide web and the "Internet" (as such term is commonly understood currently or in the future) (collectively, the "Internet"), video and audio cassette, virtual advertising, photograph, including raw footage, out takes and negatives, merchandising and program rights now or hereinafter invented in connection with or based upon the Bouts or the activities pertaining to the Bouts, including, but not limited to, training and press conferences for the Bouts (the "Pre-Bout Events"), post-fight press conferences (the "Post-Bout Events") and any parts thereof on a commercial, sustaining, theatrical or other basis, and by any and all means, methods and devices, whatsoever;

(b)  The right to sell, assign, lease, license, sublease, use or otherwise dispose of any and all of the rights granted hereunder and the results of the exercise thereof, and to authorize, license and grant the right to exercise any of the rights granted hereunder;

(c)  The right to do all things necessary for the full and complete use, exploitation and exercise of the rights granted Promoter hereunder, including the right to promote, exploit and turn to account all rights granted hereunder and the results of the exercise thereof, and the right to negotiate, enter into and perform any and all agreements relating to said rights for the proper production and promotion of radio, television and Internet broadcasts of the Bouts, the Pre-Bout Events and the Post-Bout Events, such as announcers, commercials, artwork and other elements;

(d)  All right, title and interest in and to any recordings of the television, Internet and radio broadcasts and motion picture films and video and audio cassettes of, or based upon the Bouts, the Pre-Bout Events and the Post-Bout Events, including, but not limited to, magnetic tapes, and the right to secure in its own name or that of its nominee copyright and other protection to the extent available throughout the world;

(e)  The right to use in any media the name, likeness and biography of Fighter, his manager, trainers and other persons associated with him who are connected with the Bouts, for the purpose of advertising, promotion, publicity, merchandising and exploitation of the Bouts, the Pre-Bout Events and Post-Bout Events all without compensation or payment to any of the aforesaid parties, provided, however, that in no event may such names, likenesses or biographies be used as an endorsement of any commercial product or service, except as provided in paragraph (g) below;

(f)  The non-exclusive right to use a three minute clip of the recording of any prior bout, press conferences, interviews, training sessions or other footage in which Fighter was a participant to the extent that Fighter possesses the rights thereto or can reasonably obtain such rights for the purposes of publicizing, advertising and promoting the Bouts and for inclusion within Promoter's and its licensees' telecasts of the Bouts which shall be delivered to Promoter upon request therefore; and

(g)  The right during the term hereof to use Fighter's name, image, likeness and biography in connection with games, toys and dolls, including, without limitation, video and computer games, Internet games and interactive games irrespective of whether such use is in connection with a Bout.

**VII.  POSTPONEMENT**. If any Bout scheduled to be promoted hereunder is postponed for any reason, Promoter's standard Bout Agreement applicable to such bout shall determine the rights of the parties.

**VIII.  DISABILITY/RETIREMENT**. In the event Fighter becomes permanently or partially disabled or is otherwise unable or unavailable to participate in Bouts for any reason whatsoever (including, without limitation, Fighter having his fighter's license suspended or revoked, being incarcerated or legally restrained from fighting or any other reason) during the term of this Agreement, Promoter shall have the right to either suspend the term hereof during the period of such disability, or of such inability or unavailability to participate in Bouts, or to terminate this Agreement upon notice to Fighter without any liability or obligation to Fighter, it being understood that Promoter shall be deemed to have elected to suspend this Agreement unless Promoter notifies Fighter of its election to terminate this Agreement. At Promoter's sole election, this Agreement may be suspended during the period of Fighter's temporary retirement, if any, but shall become fully operative if and when Fighter resumes his fighting career.

**IX.  FURTHER ASSURANCES**. Fighter shall execute any and all additional documents or instruments necessary or desirable to effectuate the provisions of this Agreement, including, without limitation, a standard Bout Agreement in such form as may be required by Promoter, the local governmental authority with jurisdiction over the bout and/or the organization(s) sanctioning the bout if applicable. No party hereto shall take any action or fail to take any action which action or failure shall frustrate the purposes of this Agreement and the benefits contemplated hereby.

**X.  TRAINING SESSIONS/PROMOTIONAL ACTIVITIES**. Fighter and Promoter will mutually agree on the date and location of Fighter's training, except that Fighter agrees to arrive at and train at the location of his next Bout on the date designated by Promoter, such date to be no more than ten (10) days prior to such Bout. to commence training for his Bouts hereunder on the date and at the location(s) designed by Promoter. Fighter agrees that Promoter may charge admission to Fighter's training sessions and that such proceeds shall be divided as mutually agreed between Fighter and Promoter. Fighter agrees that without additional consideration or compensation he will cooperate and assist in the advertising, publicity, and promotion of the Bouts, including his appearance at such press conferences, interviews and other promotional activities as Promoter may designate. Promoter will make reasonable efforts to include Fighter in all marketing activities for each Bout

**XI.  ASSIGNMENT**. Promoter shall have the absolute right to assign, license, or transfer any or all of the rights granted to it hereunder, including, without limitation, the right to co-promote the Bouts in association with or to deliver the services of fighter to any one or more persons or entities of Promoter's choosing. Neither Fighter nor Promoter may assign any of his or its respective obligations hereunder without the other's consent.

**XII.  EXCLUSIVITY**. In consideration of the obligations of Promoter to secure, arrange for, and promote Bouts requiring Fighter's services, and to pay Fighter's purses, as provided herein, Fighter agrees that during the term hereof, Fighter shall not participate in any bouts other than Bouts promoted or co-promoted by Promoter or for which Promoter has granted Fighter prior written permission and Fighter shall not render his services as a combative sports participant to any person, firm or entity other than Promoter, except with Promoter's prior written permission. Fighter recognizes and agrees that this restriction is necessary to protect Promoter's legitimate business interests, including Promoter's ability to promote first class combative sports events for Fighter and other fighters whom Promoter promotes, against world class opponents, at top venues, broadcast by top American and foreign broadcasters. Fighter acknowledges that Promoter has substantial relationships with a number of venues, broadcasters, and other world class boxers, and that these relationships are protected by the Promoter's ability to guarantee the availability of Fighter through this Agreement.

**XIII.  TERMINATION BY PROMOTER**. In the event that Fighter does not win the first Bout or any subsequent Bout, Promoter shall have the right to terminate this Agreement at any time by providing notice to Fighter. Alternatively, the parties may renegotiate the Agreement, taking into account the Fighter's loss or draw.

**XIV.  INDEPENDENT CONTRACTOR**. Nothing herein contained shall be construed to constitute Fighter as an employee of Promoter or Promoter a fiduciary of Fighter. Fighter and Promoter are independent contractors vis-à-vis each other and this Agreement shall not be construed to be a partnership, joint venture, trust or any other type of similar arrangement. As an independent contractor, Fighter shall be solely responsible for his own actions and expenses and except as otherwise expressly set forth herein, Fighter shall be solely responsible for the payment of any and all costs and expenses incurred by him in connection with the Bouts, including, without limitation, payment of all fees to his manager, trainers, seconds, assistants, sparring partners, his entourage, maintenance and training expenses, medical bills, medical tests, anti-doping fees, sanctioning fees, costs for championship belts, taxes, fighting licenses, permits and fees, rights clearances, insurance, and travel, food and accommodations in excess of the amounts provided by Promoter pursuant to the Bout Agreement for the Bout. Fighter shall, at his own cost and expense, be solely responsible for obtaining all licenses, permits, privileges, immunities, approvals, visas and other authorizations from governmental authorities which are necessary to entitle him to participate in the Bouts hereunder. Fighter hereby authorizes Promoter to deduct from his purse any of the foregoing costs and expenses to the extent paid by Promoter and any loans or advances heretofore made to Fighter as well as any deductions that are required by law or authorized by the applicable athletic or boxing commission or sanctioning organization(s). Fighter understands and agrees that Promoter's obligation to offer to promote Fighter in Bouts hereunder in accordance with Paragraph II above is contingent upon Fighter obtaining any and all licenses, permits, privileges, immunities, approvals, visas and other Federal and state authorizations which are necessary to entitle Fighter to participate in Bouts in the United States.

**XV.  EQUITABLE RELIEF**. Fighter acknowledges that his services as a professional boxer are special, unique, extraordinary, irreplaceable and of peculiar value, and that in the event of Fighter's breach or threatened breach of this Agreement, Promoter would suffer irreparable damage, which could not be reasonably or adequately compensated by an action at law. Accordingly, Fighter expressly agrees that in the event of such breach or threatened breach, Promoter shall be entitled, in addition to all other rights and remedies available to it, to obtain equitable relief (without having to secure any bond or other security in connection with Promoter's application for such relief), including, but not limited to, an injunction against such breach in any court of competent jurisdiction, and that Fighter will not assert as a defense in any such action that Promoter has an adequate remedy at law.

**XVI.  ATTIRE/CLEARANCES**.

(a)  Fighter agrees that no advertising or promotional material (including, but not limited to, permanent or temporary tattoos or body art) shall appear on the body of or on any item of clothing worn by Fighter, his trainers, seconds, assistants or other members of his team or entourage during and/or at the Bouts, press conferences, training sessions open to the public or press, or while at the site of the Bouts, except as approved by Promoter, such approval not to be unreasonably withheld. Promoter acknowledges that Fighter is known by the moniker, "Jermaine '989 Assassin' Franklin" and has no objection to such moniker appearing on the clothing worn by Fighter or his team.

(b)  During the term of this Agreement, Fighter agrees that he will not  (and will cause his manager, trainers, seconds, assistants and other members of his team not to) attend or participate in any shows, interviews, programs, special events or other activities produced, published, broadcast, sponsored or hosted by or held in or otherwise affiliated with any newspaper, magazine, book, Internet or other publisher, or any Internet, radio or television broadcaster, or any casino (including, without limitation, on-line casinos), hotel or arena or any other sponsor or licensee of combative sporting events without Promoter's prior written approval in its sole and absolute discretion, such approval not be unreasonably withheld.

(c)  Fighter further agrees that he will obtain prior to each of the Bouts (and does hereby grant, convey and assign to Promoter) on behalf of himself and his manager, trainers, assistants and other persons associated with him who are connected with the Bouts, all without compensation or payment whatsoever by Promoter to any person or entity, any and all required clearances, consents and licenses as are necessary with respect to Promoter's and its licensees' and assignees' worldwide exploitation in perpetuity of the Bouts as permitted in Paragraph VI above, including, without limitation, (i) any music licenses for Fighter's ring walk, (ii) footage licenses for Fighter's prior bouts, training sessions, interviews and other Fighter footage provided to Promoter hereunder by Fighter or third parties on behalf of Fighter, (iii) all consents, permissions and/or approvals for Fighter or his agents to wear, display, mention or exploit during, or in connection with, the Bouts (including, without limitation, during training sessions, press conferences or interviews) any name, logo, copyright, trademark or service mark, common law or other right (including, without limitation, any literary, dramatic, comedic, musical or photoplay right) of any person, firm or corporation, (iv) any performer residuals and consents and/or payments payable to any persons appearing in or rendering services in connection with the Bouts which are engaged by Fighter or his agents, and (v) all copyright clearances and permissions with respect to any of the foregoing.

(d)  Promoter agrees that Fighter and his corporate entity will seek sponsors on behalf of and for the benefit of Fighter. The Parties mutual agree that as long as

5

Initials: _____  _____
          Promoter         Fighter

such Sponsors are not in conflict with Promoter's shows, events, Public Relations ("PR"), and Marketing, Fighter and his corporate entity is allowed to seek such Sponsors/Sponsorships.

**XVII.  REPRESENTATIONS, WARRANTIES AND COVENANTS**.

(a) Fighter represents, warrants and covenants to Promoter that he has the full right, power and authority and is free to enter into this Agreement and has not heretofore and will not hereafter enter into any contract, agreement or understanding, whether oral or written, which conflicts in any material respect with the provisions hereof or which purports to grant similar or conflicting rights to any person, firm, or entity other than Promoter, or which would or might interfere with Fighter's full and complete performance hereunder or the free and unimpaired exercise by Promoter of any of the rights granted to Promoter under this Agreement.  Fighter further represents and warrants to Promoter that there are no claims pending or threatened or any litigations affecting Fighter which would or might interfere with the full and complete exercise or enjoyment by Promoter of any rights granted hereunder.

(b) Fighter further acknowledges that Promoter is entering into this Agreement in reliance upon the warranties, representations and covenants herein, and Fighter assumes liability for, and shall indemnify, defend, protect, save and hold harmless Promoter, its affiliated companies, divisions, subsidiaries, distributors, assigns, licensees and the respective shareholders, directors, officers, partners, employees, agents and attorneys of the foregoing (the "Promoter Indemnified Parties") from and against any and all claims, actions, suits, costs, liabilities, judgments, obligations, losses, penalties, expenses or damages (including, without limitation, reasonable legal fees and expenses) of whatsoever kind and nature imposed on, incurred by or asserted against any of the Promoter Indemnified Parties arising out of any breach or alleged breach by Fighter of any representation, warranty or covenant made, or obligation assumed, by Fighter pursuant to this Agreement.  The provisions of this Subparagraph (b) shall apply, without limitation, to claims brought by Promoter against Fighter in enforcing the terms of this Agreement.  Fighter agrees that, except with respect to an action brought by Promoter against Fighter, Promoter shall have the right to assume the defense of any such action, provided that with respect to cases involving third-party claims, (i) Fighter shall have the right to consult with Promoter regarding counsel selected by Promoter to defend such action and (ii) Fighter shall have the right to consult with Promoter regarding any settlement Promoter enters into to resolve such action.

(c) Fighter understands and agrees that by training for and participating in combative sports, Fighter is engaging in an abnormally dangerous activity and that Fighter's participation in this activity subjects Fighter to a risk of severe injury or death and that the effects of such participation may include severe medical problems which develop many months or years later.  Fighter, with full knowledge of this risk, nonetheless agrees to enter into this Agreement and to participate in the Bouts and hereby, on behalf of himself and as applicable, his spouse, heirs, executors, administrators, successors and assigns, waive, release and forever discharge any and all claims that Fighter and/or his spouse, heirs, executors, administrators, successors and assigns may have against any of the Promoter Indemnified Parties arising from or related to any injury or death Fighter may suffer as a result of his training for or participation in combative sports.

(d) In the event that this Agreement is executed only by Fighter's manager ("Manager"), Manager represents and warrants to Promoter that (i) he has a valid and binding written management agreement with Fighter which grants Manager the full right, power and authority to enter into this Agreement on behalf of Fighter and to bind Fighter to all of the terms and conditions hereof and (ii) he has discussed all of the terms and conditions of this Agreement with Fighter and Fighter has authorized Manager to enter into this Agreement on behalf of Fighter.  Manager hereby agrees to indemnify, defend and hold Promoter and its affiliates harmless from and against any and all liability, cost, or expense, including reasonable attorney's fees, Promoter or its affiliates may sustain or incur as a result of the breach or inaccuracy such warranty and representation.

(e) Notwithstanding the foregoing, Promoter acknowledges that Fighter and his representative(s) have disclosed to Promoter and Promoter is aware of the current and pending litigation between Fighter and Mark Haak.  Promoter acknowledges that Fighter has previously informed Promoter and his legal counsel that Haak has threatened to bring an action to void any agreements Fighter may enter into, including without limitations any Promotional Agreement.Therefore, Promoter agrees that Promoter will not seek penalties or damages or any other type of relief, including without limitation injunctive relief against Fighter under the Promotional Agreement regarding any current, pending, or future litigation by Mark Haak.  Further, it is anticipated that Haak will make a claim to a portion of Fighter's purse, which the Fighter disputes, as such Promoter agrees to place any amounts claimed by Haak in an escrow account with the Court or other mutually agreed escrow agent.  In addition, the parties mutual agree that should Haak in anyway attempt to stop, hinder or delay a fight,(such as by filing an injunction or other action) that Promoter has arranged for Fighter, Promoter is prohibited from claiming this as a default by the Fighter or claiming that Fighter is unavailable or unable to fight, for purposes of extending the term of this Agreement.

**XVIII.  MEDICAL EXAMINATIONS/INSURANCE**.  Within three (3) days of the execution of this Agreement, Fighter shall be examined by a medical doctor of Promoter's choice.  Such examination shall include a drug and steroid screening and a complete physical examination, including, without limitation, blood work, CAT scan, MRI, eye exam and/or any other tests or procedures requested by Promoter.  If Fighter fails to pass such examination or if such examination discloses that Fighter has any communicable diseases, such as HIV, Hepatitis, or has any prohibited or illegal substances in his system, such as steroids or illegal drugs, Promoter shall have the right to terminate this Agreement, and upon such termination, Fighter shall immediately return to Promoter any signing bonus or advance provided to Fighter hereunder.  Furthermore, at any time during the term hereof, Promoter shall have the right, but not the obligation, to have Fighter examined by a medical doctor of its choice, and if Promoter so elects, Fighter shall appear for such examination on one (1) day's notice.  Promoter and its licensees shall have the right, at its or their election, to obtain life or other insurance upon Fighter in such amounts as it or they may determine at its or their cost and expense, including, but not limited to, insurance against the failure of Fighter to appear or participate in a Bout hereunder.  Fighter agrees that he shall have no right, title or interest in such insurance and that Promoter (and/or its licensees) will be the sole beneficiaries under such insurance.  Fighter shall cooperate and assist in Promoter's obtaining such insurance, including submitting to such physical or other examinations as may be reasonably required to obtain such insurance.

**XIX.  OTHER ACTIVITIES OF PROMOTER**.  Nothing herein shall prevent Promoter from engaging in promotion activities for any other professional boxer, including others in the same weight class as Fighter, or any other activities.  Fighter further agrees that this Agreement shall be valid and binding on Fighter irrespective of the status of Promoter's promoter or other licenses in any particular jurisdiction and covenants not to assert any claim that this Agreement is void or unenforceable as a result of Promoter not being licensed as a promoter or not having any other business license in any particular jurisdiction.

**XX.  FORUM SELECTION/GOVERNING LAW**.

(a) Fighter irrevocably submits (and shall cause his manager, trainers and other persons associated with him who are connected with the Bouts (collectively, the "Fighter Team Members") to irrevocably submit) to the jurisdiction of the United States District Court for the Eastern District of Michigan ("Michigan Federal Court").  Alternatively, if the Michigan Federal Court shall not have jurisdiction over the subject matter of the action or proceeding, then Fighter hereby irrevocably submits (and shall cause the Fighter Team Members to submit) to the jurisdiction of the Circuit Court for the Third Judicial Circuit in and for Wayne County, Michigan ("Michigan State Court").  Except as provided in the last sentence of this Subparagraph (a), Fighter further agrees (and shall cause the Fighter Team Members to agree) that any action or proceeding brought by Fighter or the Fighter Team Members arising out of or in any way related to this Agreement or the Bouts shall be brought only in the Michigan Federal Court; provided, however, that in the event that the Michigan Federal Court does not have subject matter jurisdiction, then such action or proceeding shall be brought only in the Michigan State Court.  Fighter hereby waives (and shall cause the Fighter Team Members to waive) any objection to venue in the Michigan Federal Court or the Michigan State Court and any objection to any action or proceeding in the Michigan Federal Court or the Michigan State Court on the basis of forum non conveniens.  Nothing in this Subparagraph (a) shall affect the right of Promoter to serve legal process or bring any action or proceeding against Fighter or the Fighter Team Members in any manner permitted by law.  Fighter agrees (and shall cause the Fighter Team Members to agree) that a final judgment in any action or proceeding brought by Promoter shall be conclusive and may be enforced by Promoter in other jurisdictions by suit on the judgment or in any manner provided by law.  When and if a site for a Bout pursuant to this Agreement is selected within the State of Michigan, the parties further mutually agree to, and shall (and shall cause the Fighter Team Members to), execute all documents required by the Rules and Regulations of the Michigan Unarmed Combat Commission in a timely fashion, and mutually agree to, and shall, fully comply with all other requirements of the Michigan Unarmed Combat Commission and its applicable Rules and Regulations.  The parties further agree that, except by appropriate application to the Michigan State Athletic Commission pursuant to its Rules and Regulations, neither party shall (and Fighter shall cause the Fighter Team Members not to) assert any claim that non-compliance with the Rules and Regulations of the Michigan State Athletic Commission shall render this contract void or unenforceable.

(b) This Agreement shall be governed, construed and enforced in accordance with the substantive law of contracts of the State of Michigan and without regard to Michigan choice of law principles or conflicts of law principles.  In no event shall a party be entitled to punitive damages in any action arising under or in any way related to this Agreement, and all parties hereby waive their rights to any punitive damages.

**XXI.  PURSE BIDS**.  Notwithstanding the provisions of Paragraph XII of this Agreement, the parties recognize that, during the term of this Agreement, Fighter may be eligible to participate in a bout (a "Purse Bid Bout") that will be the subject of a purse bid or purse offer conducted by a sanctioning organization and acknowledge that such bouts are generally reserved for championship or elimination bouts.  Fighter acknowledges that Promoter's promotional efforts on Fighter's behalf are a significant contributing factor in Fighter becoming eligible to participate in such a Purse Bid Bout.  In the event that Fighter is designated as a participant in a Purse Bid Bout and Promoter does not win the rights to promote such Purse Bid Bout, then, in consideration of Promoter's overall promotional obligations hereunder and with the understanding that Promoter will lose the opportunity to profit from said bout notwithstanding those efforts, Fighter shall pay to Promoter a fee in recognition of Promoter's overall promotional services and the benefits realized by Fighter thereby.  The fee to be paid by Fighter to Promoter in such case shall bear a relationship to the benefits realized by Fighter and shall, accordingly, be an amount equal to Twenty-Five Percent (25%) of any amount paid to Fighter in respect of such Purse Bid Bout, unless otherwise agreed upon by the parties herein.  The fee referred to in the immediately preceding sentence shall be paid by Fighter to Promoter by check upon completion of the Purse Bid Bout; provided, however, that if requested by Promoter, Fighter shall and hereby does irrevocably direct the promoter of such Purse Bid Bout to pay such amount directly to Promoter by check upon completion of the Purse Bid Bout.  In the event that Promoter wins the rights to promote such Purse Bid Bout, Fighter agrees that his purse for such Purse Bid Bout shall be an amount equal to Seventy-Five Percent (75%) of the amount which he would otherwise be entitled to receive pursuant to the rules and regulations (or applicable ruling or order) of the applicable sanctioning organization conducting the purse bid or purse offer, unless otherwise agreed upon by the parties herein.  Fighter acknowledges that he has granted Promoter a Twenty-Five Percent (25%) reduction in the amount of the purse which he would otherwise be entitled to receive from Promoter because Fighter understands and agrees that it is in his interest for Promoter to win the rights to all Purse Bid Bouts and that such reduction will encourage Promoter to submit a winning bid instead of the receiving the additional 25% share of a bid submitted by another promoter.  The parties further understand and agree that (i) Promoter shall have no obligation to make any bid with respect to any Purse Bid Bout, (ii) in the event that Promoter makes a bid, the amount of such bid shall be in Promoter's sole and exclusive discretion and shall not in any way be tied to Promoter's minimum purse obligations under this Agreement, (iii) Promoter shall have no obligation to make a bid that would, if the bid were the winning bid, result in Fighter receiving any specified amount in respect of such Purse Bid Bout (including any minimum purse otherwise provided for by this Agreement), (iv) in the event Promoter wins the rights to promote the Purse Bid Bout, Fighter's purse (subject to the 25% reduction set forth in the immediately preceding two sentences) and other compensation and benefits (including, without limitation, training expenses, travel and hotel accommodations and meals) for the Purse Bid Bout shall be in accordance with the rules and regulations (or applicable ruling or order) of the applicable sanctioning organization conducting the purse bid or purse offer (as opposed to any differing rights provided by this Agreement), and (v) such Purse Bid Bout shall, whether or not Promoter promotes such Purse Bid Bout, be deemed to constitute a Bout hereunder for purposes of calculating the number of Bouts Promoter is required to offer Fighter during each year of the term hereof pursuant to the first sentence of Paragraph II above.

**XXII.  NOTICE OF BREACH AND OPPORTUNITY TO CURE/WAIVER.**  In the event that Fighter claims that Promoter has breached any provision of this Agreement, Fighter shall give Promoter written notice detailing such claimed breach within 30 days of the date that such cause

Initials: _____   _____
              Promoter            Fighter

of action accrued (the "30 Day Period"). Promoter shall notify Fighter within 15 days of Promoter's receipt of notice by Fighter whether Promoter intends to cure any such alleged breach. In the event that Promoter so notifies Fighter that Promoter intends to cure said alleged breach, Fighter shall be precluded from commencing any action against Promoter based upon such breach provided Promoter cures such breach within six months from Promoter's receipt of notice by Fighter. Fighter consents in advance to the dismissal of any action commenced prior to the expiration of such six month period. In the event that Fighter fails for any reason whatsoever to provide notice to Promoter of such claimed breach within the 30 Day Period, Fighter shall be deemed to have waived and released and hereby does waive and release Promoter from any and all liability with respect to such claimed breach.

XXIII.    **FIGHTER REMEDIES**. Notwithstanding anything in this Agreement or otherwise to the contrary: (i.) Promoter shall not be liable to Fighter or to any third party for any lost profits, any loss of business, or any indirect, consequential, incidental or special losses or damages, including without limitation, punitive damages, of any kind or nature whatsoever, howsoever caused; and (ii.) subject to Promoter's right to cure any alleged breach of this Agreement pursuant to Paragraph XXII above, the sole and exclusive remedy of Fighter for any claim, loss or damages in any way related to, or arising out of, this Agreement, shall be limited to Fighter's actual, direct damages (which are not excluded under clause (i.) of this sentence). Fighter hereby waives the right to assert and agrees that he will not assert that the provisions of this Paragraph are unenforceable. Nothing in this Paragraph shall be construed as a limitation on Fighter's right to terminate this Agreement in the event of a material breach of this Agreement by Promoter or on Promoter's rights and remedies in the event of a breach of this Agreement by Fighter, including, without limitation, Promoter's right to seek equitable relief as provided in Paragraph XV above. Additionally, Fighter hereby agrees that in the event (a) there is any default or alleged default by Promoter or any of its affiliates under this Agreement or (b) Fighter has, or may have, any claim arising from or relating to the terms of this Agreement, Fighter shall not commence any lawsuit or otherwise seek to impose any liability whatsoever against Dmitriy Salita or any of his affiliated companies other than Promoter (the "Other DS Companies"). Fighter hereby further agrees that (a) neither Dmitriy Salita nor the Other DS Companies shall have any liability whatsoever with respect to this Agreement or any matters relating to or arising from this Agreement, (b) Fighter shall not assert or permit any party claiming through it to assert a claim or impose any liability against Dmitriy Salita or the Other DS Companies as to any matter or thing arising out of, or relating to, this Agreement or any alleged breach or default of this Agreement by Promoter and (c) neither Dmitriy Salita nor the Other DS Companies are a party to this Agreement or liable for any alleged breach or default of this Agreement by Promoter.

XXIV.   **NEW FIGHTER REPRESENTATIVES**. Fighter acknowledges and agrees that Promoter has substantial relationships with a number of venues, broadcasters, state and foreign athletic commissions, sanctioning organizations and other world class boxers, and that these relationships are protected by the Promoter's ability to guarantee the availability of Fighter throughout the term of this Agreement. Fighter further acknowledges and agrees that Promoter's legitimate business interests, including, without limitation, Promoter's ability to promote first class combative sports events for Fighter and other fighters whom Promoter promotes, against world class opponents, at top venues, broadcast by top American and foreign broadcasters, requires a good faith business relationship with Fighter and his managers, advisors, consultants and representatives and that such representatives' cooperation, professionalism, reputation, compliance and relationship with Promoter is essential to the successful promotion of Fighter's career and that the same has been a material inducement to Promoter entering into this Agreement with Fighter. Therefore, Fighter understands and agrees to disclose any and all of his managers, advisors, consultants and/or representatives to Fighter to Promoter prior to Promoter's execution of this Agreement. Further, Fighter understands and agrees he will not engage, retain, hire, consult with, include, or involve any new or additional person or entity as a manager, advisor, consultant or any type of representative, not previously disclosed to Promoter as provided in this Paragraph, without first obtaining the express written consent and approval of Promoter of such person or entity. Fighter understands and agrees that this is a material provision of this Agreement and that Promoter has materially relied upon Fighter's representations and Fighter's disclosure of his present managers, advisors, consultants and representatives in agreeing to offer Fighter this Agreement. Fighter's failure to disclose any and all managers, advisors, consultants and/or representatives as of the date of Promoter's execution of this Agreement, or Fighter's failure to first obtain Promoter's express written consent and approval of a person or entity not previously disclosed, before Fighter engages, retains, hires, consults with, includes or involves any person or entity as his manager, advisor, consultant or representative constitutes a material breach of this Agreement. Fighter represents and warrants to Promoter that the person(s) or entity(ies) signing this Agreement as Manager hereon is/are the only manager(s), advisor(s) or representative(s) of Fighter as of the date hereof, unless Fighter notifies Promoter of any additional managers, advisors, consultants or representatives in writing prior to Promoter's execution of this Agreement. Fighter agrees and acknowledges that a breach of this Paragraph would cause harm to Promoter and that actual damages would be difficult to quantify. Therefore, in the event of Fighter's breach of this Paragraph, Fighter agrees to pay to Promoter as liquidated damages, and not as a penalty, $5,000 for every day that Fighter is in breach of this Paragraph until the date Fighter cures such breach.

XXV.    **RIGHT OF FIRST NEGOTIATION/LAST REFUSAL.**

(a)    Upon the expiration of the term of this Agreement or in the event that Promoter exercises its right to terminate this Agreement as provided herein, Fighter grants to Promoter, an optional right of exclusive "first negotiation" (as set forth herein). Promoter shall be deemed to have exercised, and hereby elects to exercise its right of first negotiation, unless Promoter notifies Fighter of its election to waive such right upon the expiration of the term hereof or Promoter's termination of this Agreement. For purposes of this Agreement, Promoter's right of first negotiation shall mean that for thirty (30) days after the date of expiration of the term of this Agreement or upon Promoter's termination hereof (the "Exclusive Negotiation Period"), Fighter shall negotiate exclusively and in good faith with Promoter with respect to Fighter's promotional rights and entering into a new exclusive promotional agreement with Promoter.

(b)    In the event no agreement between Promoter and Fighter is reached with respect to a new exclusive promotional agreement by the end of the Exclusive Negotiation Period, Fighter may negotiate with any third party with respect to Fighter's promotional rights; provided, however, that during the period (the "Last Refusal Period") commencing on the expiration of the Exclusive Negotiation Period and ending one year thereafter, Fighter may not enter into any agreement with a third party or parties with respect to Fighter's promotional rights, including, without limitation, promotional agreements, bout agreements or option agreements, without first making to Promoter a written offer (containing full details in regard thereto as well as a copy of the actual offer received by Fighter from such third party), which offer shall be irrevocable for at least

ten (10) business days after Promoter's receipt thereof, to enter into an agreement with Promoter therefor on the same Financial Terms (as defined below) offered by or to Fighter to or by said third party or parties. If Promoter rejects, or fails to accept, such offer within such ten (10) business day period, then and only then, shall Fighter be free to enter into such agreement with such third party or parties. If Fighter does not enter into such agreement with said third party or parties within five (5) days of the expiration of such ten (10) business day period, the terms of this Paragraph shall apply to any outstanding, renewed or subsequent offer received or made by Fighter with respect to Fighter's promotional rights. Promoter's failure to accept any such offer from Fighter shall not constitute a waiver of Promoter's rights of last refusal with respect to any outstanding, renewed or subsequent offers. The parties understand and agree that the term "Financial Terms" only requires Promoter to match the economic terms being offered by or to Fighter to or by said third party or parties for Fighter's purses for his bouts and does not require Promoter to match any non-economic terms, including, without limitation, title opportunities, fighting on particular dates, fighting more than two times per year, fighting particular opponents, fighting on particular networks, or at particular venues.

XXVI.    **INTERPRETATION**.    For purposes of this Agreement, (i) the phrase "does not win" encompasses any outcome other than a win, including, without limitation, a loss, draw, no decision, no contest or disqualification, (ii) the phrase "unless otherwise agreed upon by the parties herein" encompasses a situation where Promoter and Fighter enter into a Bout Agreement for a Bout where Fighter agrees to accept a purse which is less than the amount otherwise specified in Paragraph I applicable to such Bout and in that situation Paragraph I of this Promotional Agreement shall be deemed amended as to the purse amount required for such Bout and Fighter shall be deemed to have waived any right to claim that Promoter has breached this Promotional Agreement by not paying Fighter his purse for such Bout. Any reference to any gender includes a reference to all genders and any reference to the singular includes the plural and vice versa. References to persons includes individuals, corporations, associations, trusts, estates, partnerships, limited liability companies and any other legal entities created or allowed under the laws of any jurisdiction. Descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement and shall not be considered for purposes of its interpretation. Any ambiguities shall be resolved without reference to which party may have drafted this Agreement.

XXVII.    **SEVERABILITY**.    Nothing contained in this Agreement shall require or be construed as to require the commission of any act contrary to any law, rule or regulation of any governmental authority or to impose any restrictions contrary to public policy, and if there shall exist any conflict between any provision of this Agreement and any such law, rule, regulation or public policy, the latter shall prevail and the pertinent provision or provisions of this Agreement shall be curtailed, limited or eliminated to the extent necessary to remove such conflict, and as so modified, this Agreement shall continue in full force and effect.

XXVIII.    **WAIVER**.    No waiver by any party of any breach or default hereunder shall be deemed to be a waiver of any preceding or subsequent breach or default. Except as otherwise expressly provided herein, all waivers must be in writing and be signed by the party against whom the waiver is sought to be enforced. The payment of any monies by any party shall not be deemed a waiver. This Agreement and the rights and obligations of the parties hereunder shall inure to the benefit of and be binding upon the permitted assigns, successors and affiliated entities of the parties hereto.

XXIX.    **CONFIDENTIALITY**.    Fighter shall not disclose to any third party (other than his employees and agents (including consultants), in their capacity as such, on a need-to-know basis), any information with respect to the terms and provisions of this Agreement except: (i) to the extent necessary to comply with law or the valid order of a court of competent jurisdiction, in which event(s) Fighter shall so notify Promoter as promptly as practicable (if possible, prior to making such disclosure) and shall seek confidential treatment of such information, (ii) as part of normal reporting or review procedure to his banks, auditors and attorneys and similar professionals, provided that such banks, auditors and attorneys and similar professionals agree to be bound by the provisions of this Paragraph, and (iii) in order to enforce his rights pursuant to this Agreement. Promoter shall have the sole right to determine the timing and content of and to make any press announcements and other public statements regarding this Agreement, and will do so in consultation with Fighter. Promoter shall have the sole right to file this Agreement with any applicable athletic or boxing commissions and sanctioning organizations.

XXX.    **BENEFIT**.    The provisions of this Agreement are for the exclusive benefit of Promoter and Fighter and their permitted successors and assigns, and no third party, including, without limitation, Fighter's manager, trainers, seconds, assistants or other members of his team or entourage, agent, attorney or other representative, shall be a beneficiary of, or have any rights by virtue of, this Agreement (whether or not such third party is referred to herein). The parties understand and agree that all of Promoter's and Fighter's rights and obligations hereunder shall continue unabated throughout the term of this Agreement in all events (whether or not Manager continues to remain Fighter's manager during the term).

XXXI.    **ENTIRE AGREEMENT**.    This Agreement sets forth and integrates the entire understanding between Fighter and Promoter, and supersedes any and all prior or contemporaneous discussions, e-mails, written or oral agreements or representations between the parties or fighter's management and counsel with respect to the subject matter hereof. Fighter acknowledges and agrees that neither he nor any or his management or counsel are relying on any written or oral representations, statements, discussions, conversations or documents, not included in this Agreement. The parties agree that any and all discussions, written or oral, between the parties and their representatives other than this explicit agreement are entirely irrelevant to any dispute they may have in the future because this Agreement represents a thoughtful, reasoned and fair compromise of all of the parties' respective requests and positions prior to execution. No officer, director, employee or representative of a party has any authority to make any representations or promises not contained in this Agreement, and each of the parties expressly agrees that it has not executed this Agreement in reliance on any such representation or promise. Further, except as expressly provided herein, this Agreement may not be altered, amended or discharged, except by a subsequent writing signed by the parties hereto.

XXXII.    **NON-ENGLISH SPEAKING FIGHTERS**.    In the event that Promoter has this Agreement translated into a foreign language as an accommodation to a non-English speaking Fighter, Fighter understands and agrees that in the event of any inconsistency between the English version of this Agreement and the foreign language version, the English version shall control. Fighter hereby agrees to hold Promoter and any translator engaged by Promoter harmless from and against any and all claims Fighter has or may have related to any inaccuracy or omission contained in the foreign language version. Nothing herein shall be construed as to

Initials: _____   _____
            Promoter         Fighter

7

impose an obligation on Promoter to have this Agreement translated into a foreign language. In the event that Promoter does not provide any such Fighter with a foreign language version, Fighter acknowledges that he has had an opportunity to have this Agreement interpreted for him by someone that he trusts and agrees that he will not assert that Promoter prevented him from doing so.

**XXXIII. COUNTERPARTS/FACSIMILE**. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. Facsimile signatures shall be as effective as originals. Any signature page of this Agreement may be detached from any counterpart without impairing the legal effect of any signatures thereon and may be attached to another counterpart, identical in form thereto, but having attached to it one or more additional signature pages.

**XXXIV. FIGHTER'S RIGHT TO INDEPENDENT LEGAL COUNSEL.** PROMOTER HEREBY RECOMMENDS THAT FIGHTER SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL OF FIGHTER'S CHOOSING REGARDING THE NEGOTIATION AND EXECUTION OF THE TERMS AND CONDITIONS OF THIS AGREEMENT. IN THE EVENT THAT FIGHTER ELECTS NOT TO SEEK SUCH LEGAL COUNSEL, FIGHTER HEREBY AGREES THAT HE WILL NOT ASSERT ANY CLAIM THAT PROMOTER PREVENTED HIM FROM SEEKING LEGAL COUNSEL AND HEREBY RELEASES AND FOREVER DISCHARGES PROMOTER FROM ANY AND ALL CLAIMS RELATING TO FIGHTER'S FAILURE TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL IN CONNECTION WITH THE NEGOTIATION AND EXECUTION OF THIS AGREEMENT.

**XXXV. VOLUNTARINESS.** THIS AGREEMENT WHEN SIGNED BY FIGHTER (OR HIS MANAGER, IF APPLICABLE) AND PROMOTER WILL CONSTITUTE A LEGALLY BINDING CONTRACT. FIGHTER REPRESENTS AND WARRANTS TO PROMOTER THAT (i) HE HAS READ THIS AGREEMENT IN ITS ENTIRETY, (ii) HE HAS HAD AN OPPORTUNITY TO DISCUSS THE TERMS AND CONDITIONS OF THIS AGREEMENT WITH PROMOTER AND TO ASK PROMOTER ANY QUESTIONS THAT HE HAS REGARDING THIS AGREEMENT AND THAT ALL QUESTIONS HAVE BEEN ANSWERED TO HIS SATISFACTION, AND (iii) HE FULLY UNDERSTANDS THIS AGREEMENT AND HIS RIGHTS AND OBLIGATIONS THEREUNDER. FIGHTER FURTHER UNDERSTANDS THAT HE IS NOT REQUIRED TO ACCEPT ANY OF THE TERMS AND CONDITIONS AS ORIGINALLY OFFERED BY PROMOTER. TERMS AND CONDITIONS SHOULD BE NEGOTIATED BASED UPON THE RESPECTIVE INTERESTS, OBJECTIVES AND BARGAINING POSITIONS OF ALL INTERESTED PERSONS. FIGHTER ALSO REPRESENTS AND ACKNOWLEDGES THAT HE IS ENTERING INTO THIS AGREEMENT FREELY AND VOLUNTARILY WITHOUT COERCION OF ANY KIND.

Initials: _____    _____
                Promoter         Fighter